SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**KATHERINE A. RYKKEN, CAB #267196**
Assistant United States Attorney
Katherine.Rykken@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| UNITED STATES OF AMERICA | 3:25-cr-00350-AB-02 |
|---|---|
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **LUCIAN SULITANU,** | |
| **Defendant.** | |

### Introduction

Defendant Lucian Sulitanu ("defendant" or "Sulitanu") engaged in a months' long scheme to defraud elderly victims by stealing their bank cards and taking money from their bank accounts. Defendant caused a loss of at least $124,489.13 to more than ten elderly victims. The United States recommends that the Court sentence defendant to the low end of the applicable guideline range for conspiracy to commit bank fraud and bank fraud (Counts 1 and 4), and a mandatory consecutive 24-month sentence for aggravated identity theft (Count 10).

**Government's Sentencing Memorandum** **Page 1**

A.      **The Offense Conduct**

Beginning in the summer of 2023 and continuing through the summer of 2025, defendant engaged in a fraud scheme affecting elderly people. The fraud scheme generally worked as follows.  Defendant or one of his co-conspirators, either Rexona Caldararu or Petrache Mreana, would follow a victim through the grocery checkout line, watching over their shoulder to observe the pin number the victim used with their debit card to pay for groceries.  He or one of his co-conspirators would then follow the victim to the parking lot, pretending that the victim had lost cash, usually $20.  One of the defendants would insist on placing the cash into the victim's wallet or elsewhere on or near the victim's person and, at the same, remove the victim's debit card.  Sulitanu or his co-conspirator would then proceed to the victim's bank and remove as much money as possible, either via ATM or by going to the teller.  At times, defendant would also use the victim's debit card to make purchases.  Defendant caused a total loss of at least $124,489.13,[1] which loss affected 16 victims in the District of Oregon and elsewhere.

In the plea agreement, defendant pled guilty to one specific instance of this fraud scheme, along with the larger loss amount affecting the 16 victims from whom defendant stole directly. The instance to which he pled guilty occurred on November 13, 2024, when defendant and his co-conspirator Caldararu followed Adult Victim 3 (AV3) through a WinCo grocery store in Oregon City.  This followed the usual pattern of watching AV3 use a debit card to learn the PIN, following AV3 to the parking lot to steal AV3's debit card, and then using the debit card to steal

---

[1] In the plea agreement, Sulitanu agreed to a loss amount of at least $118,088.  *See* Plea Agreement ¶ 5.  The PSR correctly identified additional loss amounts, bringing the total to $124,489.13.  PSR ¶ 24.  This difference does not impact the sentencing guidelines calculation.

**Government's Sentencing Memorandum**                                                **Page 2**

$4,000 from AV3's bank account and making purchases totaling $3,495 at the outlet stores in Woodburn, Oregon.  The loss to AV3 that day totaled $7,495.

### B.    The Charges

Defendant was charged in a superseding indictment with one count of Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349, three counts of Bank Fraud, in violation of 18 U.S.C. § 1344(2), and three counts of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028(A).

### C.    The Plea Agreement & Guideline Computations

Defendant agreed to plead guilty to counts one, four and ten, and in exchange, the government would dismiss the remaining counts at sentencing.  The remaining counts are two counts of Bank Fraud (counts two and three) and two counts of Aggravated Identity Theft (counts eight and nine).

The parties agree with the following PSR computations and that defendant's criminal history category is I:

**Counts 1 and 4**

| Enhancement | Government's Position |
|---|---|
| Base Offense Level USSG § 2B1.1(a)(1) | 7 |
| Loss of more than $95,000 but less than $150,000 USSG § 2B1.1(b)(1)(D) | +8 |
| More than 10 victims USSG § 2B1.1(b)(2)(A)(i) | +2 |
| Theft from another person USSG § 2B1.1(b)(3) | +2 |
| Acceptance of Responsibility— USSG § 3E1.1 | -3 |
| Early Resolution | -3 |

**Government's Sentencing Memorandum**                                                   **Page 3**

| (3553(a)) | |
|---|---|
| **Total Offense Level** | **13** |
| **Resulting Guideline Range** | **12-18 months** |

The PSR calculates a higher total offense level of 18, based on a 2-level enhancement for vulnerable victims (USSG § 3A1.1(b)(1)), which the government acknowledges is factually supported. *See* PSR ¶ 58. This total offense level of 18 does not include the government's request for a 3-level downward variance under 18 U.S.C. § 3553 for early acceptance of responsibility. Consistent with the government's obligations under the plea agreement, the government continues to recommend that the court adopt the parties mutually agreed upon sentencing calculation as outlined above.

**Count 10**

Consistent with the plea agreement, defendant also faces a mandatory consecutive sentence of 24 months for his aggravated identity theft conviction, in violation of 18 U.S.C. § 1028A.

**Argument**

**A.    Contested Guideline Issues**

There are no contested guidelines issues.

**B.    Government's Recommended Sentence**

The United States adopts the Guideline calculations and criminal history computation set forth in the PSRs, with the one exception set forth above related to the two-level enhancement for vulnerable victims under USSG § 3A1.1(b)(1). The United States believes defendant has a total offense level of 13 and a criminal history category of I, falling within an advisory Guidelines range of 12 to 18 months' imprisonment. The United States recommends that the Court sentence defendant to the low end of the applicable guideline range for conspiracy to

**Government's Sentencing Memorandum**                                             **Page 4**

commit bank fraud and bank fraud (Counts 1 and 4), and a mandatory consecutive 24-month sentence for aggravated identity theft (Count 10).

<u>Nature, Circumstances, and Seriousness of the Offense</u>

The nature, circumstances, and seriousness of defendant's fraudulent scheme support the recommended sentence.  Defendant repeatedly targeted elderly victims shopping at a low-income grocery store and then stole from the bank accounts they used for daily expenses.  Defendant did not just take cash from their bank accounts but also used the victims' bank cards to make clothing and other purchases.  As part of the scheme, defendant also physically interacted with the victims, stealing a bank card from their wallet, purse, or pocket.  Accordingly, the nature, circumstances, and seriousness of the offenses warrant a mid-range sentence.

<u>Need to Protect the Public, Provide Adequate Deterrence, and Protect the Public</u>

The Court should also impose the recommended sentences to protect the public, promote respect for the law, provide for general and specific deterrence, and provide for just punishment. This is defendant's first conviction but not his first arrest.  He has repeatedly been arrested and released throughout the United States for the same conduct.  Thus, the recommended sentence will provide defendant with ample time to consider the consequences of his actions, promote respect for the law, deter him from committing other crimes, and provide a just punishment.  It will also have the desired goal of preventing other elderly victims from suffering the same loss.

**C.      Need to Avoid Unwarranted Sentencing Disparities**

Section 3553(a)(6) requires a court to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty for similar conduct."

According to Probation, during the last five years, there were 65 defendants whose primary guideline was USSG §2B1.1 and who were convicted of at least one count of 18 U.S.C.

**Government's Sentencing Memorandum**                                                    **Page 5**

§ 1028A, with a Final Offense Level of 18 and a Criminal History Category of I.  For the 65 defendants (100%), the average length of imprisonment imposed was 42 months, and the median length of imprisonment imposed was 44 months.  *See* PSR ¶ 123.

### D.    Restitution & Forfeiture

At the time of sentencing, the government will provide the court with a list of victims and the restitution to be paid to each party or bank, as indicated by the PSR.  *See* PSR ¶¶ 115-18. The government expects that the overall restitution amount will be approximately $118,542 to be paid to victims or, if the banks have already made the victim whole, the amount would be payable to the bank.

### Conclusion

Based on the foregoing, the government recommends that this Court impose a low-end sentence for bank fraud, followed by a 24-months for aggravated identity theft, followed by a one-year term of supervised release, subject to the standard conditions; restitution/fine in the amount of $118,542.

Dated: July 17, 2026                                 Respectfully submitted,

                                                     SCOTT E. BRADFORD
                                                     United States Attorney

                                                     /s/ *Katherine A. Rykken*
                                                     KATHERINE A. RYKKEN, CAB #267196
                                                     Assistant United States Attorney

**Government's Sentencing Memorandum**                                **Page 6**